Good afternoon. We are here to hear just a single case this afternoon. Adudath Israel of America v. Hochul. And we're ready to proceed. Good afternoon, your honors. Alex Smith on behalf of the appellants. This court should vacate the district court's fees order for two reasons. First, the district court abuses discretion in reducing fees relating to appellants' motion for injunctive relief pending appeal from this court. And second, the district court abuses discretion in awarding fees usually lower than at least the highest in-district rate for complex civil rights litigation. Indeed, a fees enhancement was warranted in this case to ensure that scapegoated minorities, such as appellants, can have meaningful opportunities to vindicate their constitutional rights against a powerful and hostile decision maker. Turning to the first error of the district court. The district court abuses discretion in reducing fees by almost $45,000 relating to counsel's work for an injunction pending appeal from this court. The district court identified the correct standard, but it simply didn't apply it. The standard for reducing fees relating to unsuccessful legal work or pursuing unsuccessful contentions is that that work must be frivolous. The motion must be frivolous. Does it always have to be frivolous? I mean, doesn't sometimes a district court reduce fees by just saying that certain hours weren't reasonably expended? It's true the district court did articulate the frivolous standard, but did it have to? Is that the only possible standard for reducing fees? While a district court has discretion to reduce fees if time is not reasonably spent, if it's not a reasonable time expenditure. Right, so could the district court have concluded that going straight to the court of appeals with that first filing before the district court just wasn't a reasonable use of the attorney's time? Well, the United States Supreme Court in Hensley v. Eckert has defined what a reasonable time expenditure is. That's any time that is not excessive, redundant, or otherwise unnecessary. But this court in Siegel v. Merrick held that where you're dealing with an unsuccessful motion, we look at what was the end result, not what was the interim result. So where you're looking at an unsuccessful motion or pursuing an unsuccessful contention, it's that to disallow fees, it must be frivolous. It's not the reasonableness standard that the district court was applying. It's the frivolous standard. Can you say any case other than Siegel? Because when I look at the language in Siegel, it sounds like more rule application than rule pronouncement to me, that in the circumstances of this case, we don't find this to be a reasonable deduction. That might be one way of reading it. Or are there other cases that talk about this? Well, Siegel applies the frivolous standard. And we don't believe that it just applies to the factual circumstances of that case. It's the principles that this court in Siegel was applying that are important. It was saying that we don't want to essentially incentivize overly conservative legal tactics. We want to ensure that there's a vigorous prosecution of rights, which is particularly important in this case, where you're dealing with the prosecution of civil rights claims. And that's what the Supreme Court in Hensley has recognized, is that we don't reduce fees for unsuccessful legal contentions. We look at the end result. That's what matters. So you're saying that it needed to have been frivolous. But even if it only needed to be reasonable, or the district court had discretion to decide it wasn't reasonable, was it reasonable for you to go straight to the court of appeals? Absolutely, Your Honor. While we do believe that the frivolousness standard applies, even under a reasonableness standard, we easily surpass that standard. But that's because in this case— Then why would that be? Because Rule 8 does say you should go first to the district court. So why was it reasonable in this case? What we were dealing with in this case was an ongoing violation of constitutional rights where the district court had just denied a preliminary injunction, requesting essentially the same request that we would have been asking, pursuant to Rule 8 for an injunction pending appeal. We cited cases in our briefing to this court in pursuing that motion for injunctive relief that shows that under the rules text that allows to bypass the district court if it's impractical, if it's futile, that it was permissible in circumstances such as these. And indeed, Judge Park found in his dissent that in this case it would have been futile to have proceeded first to the district court because the district— So the argument is that because the district court had just applied a standard for a preliminary injunction, which is lower than the standard for an injunction pending appeal, or maybe the same, but I think we said in that order that it was a lower standard, that it was clear that the district court would have denied the relief anyway, and you were under time pressure because of religious observance. Is that right? That's absolutely correct, Your Honor. And the district court found that there was no irreparable injury, which under this court's precedent and the United States Supreme Court precedent, where you're dealing with the deprivation of the free exercise of religion, that is presumed irreparable injury. And so it would have simply been futile to return to the district court to ask for that same relief. Is impractical being the same thing as futile? We believe that it does, Your Honor. It's a reasonable construction of the term of impracticability is that it would be futile, that it's unnecessary, essentially. But regardless, we believe that this was a reasonable position based on the reliance of those other cases by other circuit courts. And as well, it's a position that Judge Park adopted in his dissent. You're asking for double what Gibson Dunn got in the companion diocese case. I know your argument is that you challenged both the capacity and percentage limitations, and there was more expert work on that, but was it really twice as big a case? Your Honor, I have two answers to that question. First, the diocese case is not an apt comparator because, first, that's a voluntary settlement. We don't know what numbers were baked into reaching the $400,000 number. But that case essentially was resolved before the United States Supreme Court at the end of November 2020. This case was vigorously opposed, both not only on the fixed capacity limits, but also on the percentage capacity limits. We're seeking a statewide injunction. So we not only had to return to this court where our preliminary injunction appeal was vigorously opposed, but also the district court as well. And so what we're asking for here is a reasonable rate to ensure that minorities such as appellants who are being openly targeted by a decision maker who's at the height of his power can secure competent counsel and competent counsel that have the meaningful resources to sacrifice their paying clients and sidestep and fully devote their time to pursuing constitutional rights claims on behalf of a minority such as appellants. And so to move on to our second point, Your Honors, we believe the district court abused its discretion in awarding fees using lower than at least the highest in-district rate for complex civil rights litigation and indeed abused its discretion in failing to award a fees enhancement because that's what we need to ensure that scapegoated minorities can have meaningful access to competent counsel. The district court cited the appropriate standard for both of these issues. It cited the Johnson factors that this case has set forth in Arbor Hill, but it didn't apply them correctly. It provided mere lip service to the resounding success in this lawsuit. This was a landmark case of the United States Supreme Court that ultimately overturned or not overturned, but rather set the stage for lawsuits across the country that vindicated the deprivation of constitutional rights for houses of worship. Before you run out of time, can I ask you about your request for us to award appeal fees if you're to win some of this or all of it? Are there any cases where we've done that, calculated the fees for the appeal expenses in the first instance? Well, we have not found any cases in which this court has calculated appellate fees in the first instance, Your Honor. We believe that this is a very unique case. The issues on appeal will resolve this litigation in that by vacating or remanding to the district court, the district court won't have to do anything else relating to the underlying litigation fees. This court will be resolving the hourly rate and the one issue relating to the reasonableness of the hourly rate. If we resolve the hourly rate, presumably there's a multiplier of the number of hours. Isn't that just pretty straightforward math? Yes, Your Honor. We believe it's very straightforward math. This court is best situated to decide the reasonableness of the hours incurred on appeal, which is what the district court explicitly said in her order relating to the underlying litigation fees. But, Your Honor, unless there are any other questions, we reserve the remainder of our time for rebuttal. Thank you. May it please the Court, I'm Dustin Brockner on behalf of the Governor of New York. Review of the awards is highly deferential, and in its thorough 38-page opinion, the district court did not abuse its broad discretion by awarding $446,000 in fees for a case whose merits were resolved in just five months. I'd like to turn to the motion for injunction pending appeal, while not filed with this court. While another district court may have reached a different conclusion, the district court here acted well within its discretion by reducing fees, partially reducing fees, for a motion that this court held was procedurally defective. Roughly 20% of Troutman's total hours were spent on this one motion, and the district court reduced Troutman's fees by just 10%. It's a partial reduction, and that was a reasonable reduction. This court held that plaintiffs had failed to comply with the straightforward requirements of Rule 8. What's the basis for the 10% calculation? I just don't understand what that's tethered to. It's tethered to the fact that the motion took up 20% of the total time. There's been no dispute on that point that they devoted 200 of their 1,000 hours to this one motion, and what we were asking for is a partial reduction, 10%, which would effectively reduce the time in the motion by half. So I understand the 20% of the motion part if it was about the motion, but then it turned into 10% of the whole thing. Your Honor, it was 10% reduction of the time across the board, and that's effectively, given that the same timekeepers who worked on the motion also worked on the entire case, that has had the effect of reducing the time on the motion by 50%. We made this assertion, and we explained this in our opposition brief. They never disputed that 10% roughly tracks 50% of the motion. So why 50% of the time spent on the motion? Because it was procedurally defective, but there was something to it, and so you get 50%? Like, how do you arrive at the 50% of the motion? Well, Your Honor— If the whole thing was defective, why not 100%? Because this falls within the district court's discretion, and there's not one specific number that this kind of defect must be— a percentage must be tied to in every case, and we thought that given that that was the appropriate under the circumstances, that's what we recommended. You say that the requirements of Rule 8 are straightforward, but the requirements of Rule 8 just say that you can go straight to the Court of Appeals if going to the district court first is impracticable, right? Yes, Your Honor, but this court found, over Judge Park's dissent, but the district court here recognized what the majority held, which was that they failed to comply with Rule 8, that their motion for P.I. was denied on October 9th? They waited 10 days before appealing. So the fact that it's unsuccessful, or the fact that the two judges decided that it would have been practicable, does that mean that there can't be fees? Don't we look at whether it was frivolous? Yes, Your Honor. At least whether it was reasonable. Exactly, Your Honor. I think they're confusing two concepts, being eligible for fees and being entitled to fees. Because the motion wasn't frivolous, they're eligible for fees, but the district court still has to make sure the time expended on it was reasonable. Okay, that's what I was getting at before, and so the argument would be that the time, that 50% of the time wasn't reasonably expended because they should have gone to the district court first. Wouldn't that have increased the fees? I mean, if they had gone through with the futile Rule 8 motion, that would have been more. Not necessarily. Two responses to that, Your Honor. Not necessarily as a factual matter. Here, they had, in their opening brief, they said, we complied with Rule 8 because we saw an injunction pending appeal in the district court. That's a footnote. They were wrong. We pointed out their mistake. Then in their reply brief, they had to spend time researching this issue, trying to correct their error. They probably had to prepare for it at oral argument, and complying with procedural rules always takes a little bit more time. But fee awards are about incentives, and the proper incentive that parties should be complying with the rules of federal procedure. You want parties, for example, on a summary judgment motion, to do a proper Rule 56-1 statement. You want a party before— So you have to comply with the rules, but I guess my question is, why isn't it reasonable to say that they had an argument that it was impracticable? So they say the district court had just denied a request for a preliminary injunction that is easier to get than an injunction pending appeal, and so the district court was not going to apply a higher standard and reach the opposite result. And they were under time pressure because of the religious observance coming up. So why isn't that at least a reasonable or plausible argument to say that going to district court first was impracticable? Several responses to that, Your Honor. They received tens of thousands of dollars for this motion, at least over $40,000 for this motion. So they were handsomely compensated for this motion. So we're just talking about a reduction. In terms of timing, Your Honor, I think it's actually—I'd like to get this straight. October 9th is when the PI was denied. They didn't file their notice of appeal. And this is in the motion panel's decision. They didn't file their notice of appeal to October 19th, and in those 10 days, they didn't ask the district court once for injunction pending appeal. They could have. Even on October 19th, when they saw that the diocese had sought that relief in the district court first, they drafted a letter, but they didn't file it with the district court. So the timing constraints are not quite what I believe it's been—what was discussed earlier. And if I just can take a step back, any reasonable paying client would expect at least a discount under the circumstances. The hourly rates plaintiff counsels were receiving was well above the prevailing market rates. They spent over 200 hours on this motion. That's multiple attorneys working full time. Yet they committed an error that was an independent basis for denying that motion. Any reasonable paying client would look at that bill and expect a discount. And again, this would create proper incentives. Parties should be complying with rules of procedure, even if they could take a little bit more time in some circumstances. But plaintiff's position is that counsel must be paid, is entitled, for every hour spent, even if they're disregarding procedural rules. So long as that action isn't frivolous. But that's not the standard. There still has to be—to be entitled to it, there still has to be a reasonable time expenditure. So if a lawyer had said to the client, the Rule 8 requires us to go to the district court first, but we have an argument that it's impracticable here because the district court just applied the same standard to deny this relief and because of time pressure. And so therefore, we recommend going to the court of appeals first. That wouldn't have been crazy advice, would it have been? Correct. And if this—if they had filed it the next day, said this was a solo practitioner and had to file it the next day and spent five hours on the motion, that's a different case than 200 hours at top-of-the-line rates. But this question about the violation of the procedural rules, why is that—why does it matter what the overall rates were? Isn't it just about whether the compliance with Rule 8 justifies the reduction? Yes, but I think it's the totality of the circumstance, what a reasonable-paying client would expect under the circumstances. And if I could just talk about— I just want to say, if so, a solo practitioner had said, I think there's a strong argument for saying it's impracticable to go to the district court first, so I recommend going to the court of appeals first, that would have been reasonable coming from a solo practitioner but not from a firm of lawyers with a number of attorneys? No, Your Honor, I'm sorry. And actually, can I just quickly—when they filed their motion, they didn't say it was impracticable. They said they already complied with Rule 8, and they hadn't. They said we had already filed—we already sought this relief in the district court. That's a footnote in their motion. So they didn't advise what you are saying they could advise. What I was saying with the solo— I get that quirk of the record, but I'm just asking just in a hypothetical. If the way this had worked is they provided that advice, would that have been unreasonable advice to provide to a client to suggest this course of action? So putting aside that that's not what they did, but no, that would not be reasonable. But if it turns out that they are disregarding Rule 8, which was the case here, I mean that is at least a partial reduction. On my hypothetical, they're not disregarding Rule 8. They're saying we have a plausible argument that we can comply with Rule 8 by saying it's impracticable to go first to the district court because of the application of the standard and because of the time pressure. I'm just curious if that would be reasonable advice from an attorney. It could be. I mean one of the options provided by Rule 8 is if it's impracticable and if an attorney looks at it and says we think we fall within that and the time constraints are not 10 days—you know, it's not 10 days as was here. Yes, that's a different case. And it's different because we don't know that they provided that advice, and it looks like there was a mistake, you're saying, from the way the filing was done. But like doing the same things might have been reasonable with a different record? And district courts have discretion. A different district court looking at this might have come to a different conclusion, but on this it was not an abuse of discretion to take the motion's panel's finding that Agadath unjustifiably disregarded Rule 8's straightforward requirements and accept that as that's what they did. And if I may, can I turn to Siegel briefly? First, Siegel doesn't apply to motions. It's rational. It deals with unsuccessful legal theories. The court there, Judge Friendly, said counsel should not be deterred from exploring different legal claims. That doesn't apply when we're dealing with procedural violations. You want lawyers to be deterred from disregarding procedural rules. And even taking Siegel as applying in this kind of circumstances, what the district court did is exactly what Siegel suggests. You can scrutinize the amount of time spent on the unsuccessful work and then include all or part of that in the lodestar, and the district court here did that. It included some but not all the fees, giving Agadath Israel tens of thousands of dollars for this motion, $446,000 in fees alone, tens of thousands of dollars more than what the diocese brought, and diocese accepted $400,000, which is fees and costs, and this is $446,000 in fees alone. And I'd like to talk about the, if I can, the hourly rate. District courts have considerable discretion, and here they carefully considered each of the factors. They looked to awards in similar cases. Diocese was certainly a similar case. It accepted $400,000 for fees and costs. It considered the relevant expertise of each attorney. Plaintiffs' own cases admit, say, the highest rates are reserved for experts in the field, and some bill keepers in this case got the highest rates, but not every, and the district court did not abuse its discretion in finding not every attorney in this case was an expert in the free exercise clause. In fact, Troutman failed to cite a single prior free exercise case. Can you address your adversary's argument that the fees settlement in the diocese case is not something that should have been or should be considered? Yes, Your Honor. I think it's comparative for two reasons. These cases proceeded in tandem for months. When they saw an injunction pending appeal in this court, they sought the same relief. When they went to the Supreme Court, they sought the same relief. And, in fact, the diocese did more in the district court. They had an evidentiary hearing on their PI motion. And it is true plaintiffs sought broader relief, but the governor consented to that relief. It was unopposed. There were no discovery, no evidentiary hearing in the district court. So it's at least a comparator for those reasons, and plaintiffs got, and it was brought by Gibson Dunn, and plaintiffs here got tens of thousands of dollars more than that. I think that's just showing within the range of permissible decisions, if you look at another case that proceeded in tandem and brought the same kind of claims, it at least confirms that the fee award here was sufficient to attract competent counsel to bring a lawsuit to challenge the executive order. Before you sit down, can I just confirm that I have your position on frivolousness? You don't. Let me ask you this one. Do you agree that Appellant's PI motion was not frivolous? Their preliminary injunction motion? Yes. That's correct. There were one filed in the district court. Correct. Yes. We did not take the position. Well, the motion, the injunction pending appeal, do you think is frivolous? One filed in this court. No, we took the position that it should be reduced given the amount of hours expended. Your position is not that it was frivolous. Your position is not that it's frivolous, but there should be a deduction. It was reasonable to deduct some amount. You proposed 50% for a procedural violation. Yes, that was an independent basis for denying the motion. That's what I was asking. Yes. Sorry, Your Honor. And then just briefly on the motions for fees. Motions for fees filed in this court should be denied because plaintiffs shouldn't prevail on appeal, but it's premature in any event. They haven't cited a single case where this court has ever decided fees on appeals. Their main reason is that this court is more familiar with the work done on appeal. That's what they said in their brief. That's always true. That's not a reason for this panel to be the first in potentially the first in Second Circuit history to award fees and which could invite additional applications in future cases for fees appeals. We ask that this court affirm. Thank you. Thank you. Your Honor, I want to briefly address a few points that were made relating to the denial of fees relating to the motion for injunction pending appeal. Let's be clear. In the district court, Apelli argued that those fees should be denied not because they were excessive or that the hours were excessive because it was an unsuccessful motion. That's the standard that the district court was looking at. The United States Supreme Court in Hensley has said that a court does not have discretion. It should not deny fees simply because a legal contention is not successful. It's the end result that matters. It's not an interim result. The district court did not say that it was denying the fees because it was unsuccessful. The district court said it was denying the fees because of the procedural violation. So what's the implication of that? The district court was thinking, well, this is an hour's reasonably expended because you weren't serving your client well by not complying with Rule 8. We view it as one is the same whether or not it's unsuccessful on the merits or whether it's unsuccessful because of a procedural hiccup. That's simply put. It's because it was unsuccessful. But even looking at the reasonableness standard, we believe this was an— If the rule said just clearly without any exception you can never file such a motion in the Court of Appeals and you go ahead and do it anyway, a district court can't deny you fees for that because that would be the same thing as saying you're denying fees because it was unsuccessful? I believe that would likely be a frivolous argument in that standard, in that situation, Your Honor, in which if there is absolutely no exception— So it can't be—whenever it's unsuccessful but non-frivolous, the district court can't deny it on that basis? That's correct, Your Honor. I believe that's what Hensley supports and that's what this court and Siegel supports. And I want to clarify a few things about the record in terms of the reasonableness or whether or not this position was frivolous in not proceeding first in the district court. This wasn't an attempt to backfill. Where Apelli pointed this out in opposition and we backfilled by doing some research and put together a creative argument. This was a deliberate position that we believe our time record supports that we researched this position, found that our position was supported by other courts' case law. And I personally can say—and we put this in our reply brief—I consulted with this court's clerk's office and we felt very comfortable that we did not need to proceed before the district court before moving in this way. Did the moving brief say that you had sought an injunction pending appeal in district court? No, Your Honor. We stated in our opening brief that we believe we had complied with the rules text because the district court had already denied a preliminary injunction on essentially the same basis. That's what we stated in our opening brief. And I think it bears mentioning— So you're saying that you had developed a considered position that was because the district court had denied it under at least the same standard and I guess also the time pressure that you mentioned in the reply brief, that it would have been impracticable to go to district court first. That's absolutely correct, Your Honor. And I think it bears mentioning as well that regardless of the Rule 8 issue, this panel in denying the motion went through the merits. Instead, it would have denied the relief regardless of whether or not Rule 8 had been complied with. And I don't think anyone here disputes that certainly our position on the merits was not frivolous. Judge Park would have granted that motion and the United States Supreme Court ultimately did grant that relief. Your Honor, unless there are any— Yes, Your Honor. It's an application for writ of injunction. That doesn't have a requirement that you go first to the district court, right? That's correct, Your Honor, but— So the idea about whether you had to file first but the district court just wasn't before the Supreme Court. Well, I'm not aware of any United States Supreme Court opinion in which it's granted an emergency injunctive relief in which a party has not first proceeded before the Second Circuit or any circuit before proceeding to the United States Supreme Court. But ultimately, the factors, the elements in granting the relief that the United States Supreme Court was applying in that case were the factors that this Court— The merits factors. The merits factors. Not the question of whether it was impractical or not. That was not before the Supreme Court. That's correct, Your Honor. It was not. But we believe that it was an eminently reasonable position both on the merits and on the procedure as well. And we ask that this Court vacate the district court's fees order and remand ordering the district court to enter an award granting fees in the amount set forth in our briefing. Thank you, Your Honors. Thank you both. Well argued. We will take the matter under advisement. I'll ask the deputy to adjourn court. Court is adjourned.